**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BANNER INDUSTRIES OF N.E., INC.,

                              Plaintiff,

           - v -                                    Civ. No. 1:11- CV-1537
                                                         (NAM/RFT)

KENNETH L. WICKS and
HARRINGTON INDUSTRIAL PLASTICS LLC

                              Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

REGNANTE, STERIO & OSBORNE LLP   SETH H. HOCHBAUM, ESQ.
*Attorney for Plaintiff*             LAURA R. MCKELLIGOTT, ESQ.
Edgewater Office Park
401 Edgewater Place, Suite 630
Wakefield, Massachusetts 01880

McNAMEE, LOCHNER LAW FIRM         GLENN P. DOHERTY, ESQ.
*Attorney for Plaintiff*
677 Broadway
Albany, New York 12207

McCARTER & ENGLISH, LLP           PATRICK J. COMERFORD, ESQ.
*Attorney for Non-Party Adam Herbert*
265 Franklin Street
Boston, Massachusetts 02110

**RANDOLPH F. TREECE**
**United States Magistrate Judge**


**MEMORANDUM-DECISION and ORDER**

On November 30, 2011, Banner Industries of N.E., Inc., (hereinafter "Banner")

commenced a lawsuit against its former employee, Kenneth Wicks for, *inter alia*,

breach of employment and settlement agreements, conversion, and fraud, and against

Harrington Industrial Plastics, LLC, (hereinafter "Harrington"), a competitor of

Banner and currently Wicks's new employer, for tortious interference with those

employment agreements. Dkt. No. 1-1, Compl.[1] As discovery progressed between

these parties, other third parties, including Asahi/America, Inc. (hereinafter "Asahi"),

were served with subpoenas seeking documents. In addition to seeking documents

from Asahi, Banner served subpoenas to depose Adam Herbert, Asahi's Business

Development Manager, which have been resisted by both Herbert and Asahi.

On July 12, 2013, Banner filed a Motion to Enforce Subpoena and Compel

Attendance of Adam Herbert at a Deposition as well as holding Asahi and Herbert in

civil contempt in order to assess compensatory sanctions, including attorney fees.

Dkt. No. 78, Pl.'s Mot. to Compel.[2] Asahi not only opposes the Motion to Compel but

filed a Cross-Motion for Sanctions as well. *See* Dkt. No. 80, Asahi Opp'n & Cross-

Mot., dated Aug. 2, 2013.[3] Banner filed a Reply to Asahi's Opposition and Cross-

---

[1] Initially, this action was commenced in the Superior Court of the Commonwealth of Masschusetts but subsequently removed to the District Court of Massachusetts on December 13, 2011. Dkt. No. 1, Notice of Removal. Shortly thereafter, this lawsuit was transferred to the Northern District of New York. Dkt. No. 11, Order, dated Dec. 30, 2011.

[2] Banner's Motion to Compel is comprised of the following: Dkt. Nos. 78 & 79, Notice of Mot.; 79-1, Pl.'s Mem. of Law; 79-2, Eric Richard Aff., dated July 12, 2013; 79-3 through 79-12, Exs.

[3] Asahi's Opposition and Cross-Motion is comprised of the following: Dkt. Nos. 80, Asahi's
(continued...)

Motion. Dkt. No. 82, Pl.'s Reply Mem. of Law & Exs. For the following reasons, Banner's Motion is **granted in part** and **denied in part**, and Asahi's Cross-Motion for Sanctions is **denied**.

## I. BACKGROUND

### A. The Parties and the Genesis of the Lawsuit

Both Banner and Harrington are manufacturer's representatives and multiline retail distributors of industrial and high purity flow component parts such as valves, tubing, gauges, and other industrial and high purity flow components, and actively compete for customers in every market in which they coexist. Dkt. No. 1-1, Compl. at ¶¶ 8 & 27-32. From 2005 to 2009, Wicks served as Banner's National Sales Manager. *Id*. at ¶¶ 9-11 & 15. While employed by Banner, Wicks executed a written agreement not to divulge Banner's proprietary information and trade secrets nor to compete against Banner for a three (3) year period upon termination of his employment. Upon his separation on September 16, 2009, Wicks further executed a settlement agreement wherein he agreed, in relevant part, to adhere to the obligations of non-disclosure and non-compete provisions of his employment agreement. *Id*. at ¶¶ 12-13 & 21. On or about August 22, 2011, Wicks became Harrington's

---

[3](...continued)
Mem. of Law; 80-1 through 80-7, Exs.; 80-8, Daniel Anderson Decl., dated Aug. 1, 2013; 80-9, Robert Bacon Decl., dated Aug. 2, 2013; 81, Asahi Supp. Exs.

Technical/Outside Sales Representative in its Malta, New York Office. *Id*. at ¶ 26; Dkt. No. 80-9, Robert Bacon Decl., dated Aug. 2, 2013, at ¶ 15.

Asahi is a manufacture of corrosion resistant piping, valves, fittings, and accessories, and yet it does not have direct sales accounts with the end-users. Essentially, Asahi relies upon distributors, who are selected by the end-user, to sell and service it products. Dkt. No. 80-8, Daniel Anderson Decl., dated Aug. 1, 2013, at ¶ 8. At various times and locales, both Banner and Harrington have served as Asahi's distributors.[4]

In 2010, computer chip magnate, Globalfoundries, was constructing an enormous semiconductor fabrication plant ("Malta Project") which, obviously, would require a tremendous amount of piping, valves, and fittings. Both Banner and Harrington were interested in attaining work on this Project, but neither were in a position to supply piping alone, so both approached Asahi to compete for its business, especially in the New York market and, in particular, in securing this Project. Anderson Decl. at ¶¶ 15-16. The distributor/manufacturer business model is highly complex, with many factors to be considered in the construction and finalization of a deal between the two entities. *Id*. at ¶ 17. While Asahi was willing to back a

---

[4] Asahi works regularly with hundreds of distributors both nationally and internationally, including million dollar projects. Dkt. No. 80-8, Daniel Anderson Decl., dated Aug. 1, 2013, at ¶ 5. Banner and Harrington are among the hundreds of Asahi's distributors albeit in different geographical areas. Dkt. No. 79-2, Eric Richard Aff., dated July 12, 2013, at p. 2 n.1.

distributor that could match its standards, it was incumbent upon the distributor to create a comprehensive channel for a piping program that may win the bid from Globalfoundries before Asahi committed to the plan. These distributors would have to demonstrate that they could meet Asahi's prerequisites, handle the size of the project, and win the bid. Essentially, under this business model, the business relationship between the distributor and manufacturer is not solidified until the distributor has taken the appropriate steps to commit to and create a realistic channel to the project. *Id*. at ¶¶ 16-18. Although Banner had served as a channel distributor for Asahi products in other states, it did not have a similar license for New York. Dkt. No. 80, Asahi Mem. of Law at p. 2.

Both Banner and Harrington pursued the next steps, without any promises or commitment from the manufacturer, in order to be Asahi's New York distributor for the Malta Project. Harrington had leased a 14,000 square foot facility in the vicinity of the Malta Project during the Spring of 2011 and prepared to compete with other local distributors for the Malta Project. And after taking all of the necessary steps, by June 2011, "Asahi had made their first order with Harrington." Anderson Decl. at ¶ 19. Thirty days later, Banner presented its "non-competitive plan," which comprised of a mobile home set-up in the parking lot on the site of the Malta Project. *Id*. at ¶ 20. Asahi visited Banner's site but was not impressed with that infrastructure, ultimately

concluding that the mobile home approach was "too little, too late." *Id*. And, on September 12, 2011, Asahi notified Banner of its decision not to extend to it a distribution license for New York. Dkt. No. 80-3, E-mail, dated Sept. 12, 2011.

## B. The Lawsuit

As noted above, Wicks was Banner's National Sales Manager from August 11, 2005, until September 16, 2009, at which time his conditions of employment were subject to a non-disclosure/non-compete agreement. Dkt. No. 79-2, Eric Richard Aff., dated July 12, 2013, at ¶ 2. While serving as Banner's National Sales Manager, Wicks had negotiated with Adam Herbert, Asahi's Business Development Manager, on previous manufacture/distributor agreements. During 2010 and 2011, after Wicks had left Banner's employment, Eric Richard, Banner's Vice President, was negotiating with Asahi for access to its product line in New York and to sell those products to end-users. *Id*. at ¶ 5. It appears that while Richard was negotiating with Herbert, Wicks commenced his employment with Harrington as its Technical/Outside Sales Representative for the Malta Office on August 31, 2011. *Id*. at ¶¶ 4 & 6. Banner alleges that Wicks assisted Harrington in securing the distributorship with Asahi and also depriving Banner of an opportunity to represent Asahi in New York, and consequently breaching his non-competitive agreement with Banner. *Id*. at ¶ 7. Furthermore, Banner alleges that in violation of the agreements and by using Banner's

confidential information, Wicks assisted Harrington, a competitor, to solicit and take business away from Banner. Dkt. No. 1-1, Compl. at ¶¶ 34-35. Anderson, Asahi's Senior Vice President, avers that he did not know of Wicks's employment departure from Banner to Harrington until after the Harrington deal was finalized, and Asahi posits that Wicks's involvement in the Malta Project did not occur until after the deal was settled. Anderson Decl. at ¶ 21; Asahi Mem. of Law at pp. 4-5.

On December 5, 2011, Banner initiated this lawsuit against Wicks alleging several common law causes of action against him, however, only the breach of contract causes of action against Wicks and a tortious interference with a contract against Harrington survived. Dkt. No. 71, Mem-Dec. & Order, dated June 11, 2013; *see generally* Compl.

### C. Subpoenas

Initially, a subpoena *duces tecum* was served upon Asahi for records related to Wicks and Harrington.[5] Objections aside, Asahi produced 400 pages of "responsive documents" with the understanding that it "will not produce a witness for deposition . . . without a court order[.]" Asahi Mem. of Law at pp. 5-6; Dkt. No. 80-4, Lt., dated Aug. 24, 2012. Asahi's admonition notwithstanding, on February 15, 2013, Banner

---

[5] In conjunction with the service of this and other non-party subpoenas, the Court issued an Order extending the parameters of a previous Protective Order's "Attorney's Eyes Only" provision to any document production made by these non-parties. Dkt. No. 40, Order, dated Apr. 2, 2012.

caused a subpoena to be issued from the District of Massachusetts upon Herbert for his testimony in this matter. Dkt. No. 79-3, Pl.'s Mass. Subpoena. Upon being advised that Herbert was not an officer of Asahi and resided in New Jersey, as well as raising other objections to the subpoena, Dkt. No. 79-4, Lt., dated Apr. 4, 2013, Banner caused yet another subpoena to be served upon Herbert but this time issued from the District of New Jersey, Dkt. No. 79-5. Likewise, Asahi and Herbert registered their objections to Herbert being compelled to provide depositional testimony in this lawsuit.[6]

Succinctly, Asahi opposes Banner's Motion to Compel Herbert's deposition on the grounds that: (1) Herbert's deposition is not relevant to the claims in this action; (2) the subpoena does not designate the nature of Banner's inquiry of Herbert; (3) any information sought is confidential business information which deserves to be protected; (4) the request for testimony is an undue burden; and (5) the information being sought would be duplicative or already available from the parties. *See generally* Dkt. No. 80, Asahi Mem. of Law. Of heightened concern for Asahi, which very well may be Banner's objective, is the disclosure of the factors Asahi employs in selecting

---

[6] Initially, in order to enforce the Subpoena and compel Herbert's testimony, Banner would have had to turn to the District of New Jersey for relief. However, based upon the parties' Stipulation and an Order from the District of New Jersey, this matter was transferred to this Court to address the issue. *See* Dkt. No. 72-1, Dist. N.J., Order, dated June 14, 2013, & 76, Order, dated June 25, 2013, at pp. 1-2.

its distributors, and may have been used when determining Harrington as its partner in the Malta Project as opposed to Banner. Asahi claims that this selection formula is proprietary and a trade secret.

## II. DISCUSSION

### A. Relevancy

The first matter to be considered is whether Herbert, a non-party, has any pertinent information that my be relevant to this litigation. Because a subpoena is being used as a discovery device in this case, it is well settled that a court seeking resolution of a discovery dispute within the parameters of a subpoena should refer to the Rules set forth in FED. R. CIV. P. 26-37. 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, at ¶ 45.03 (3d Ed. 2012).

The scope of discovery in federal lawsuits is supposed to be significant, flexible, and broad with the court retaining authority to either expand or contract discovery to meet the needs of the particular litigation. FED. R. CIV. P. 26(b)(1) states in pertinent part that:

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

In this regard, when the court's authority is invoked, relevancy revolves around good

cause being shown and that the requested matter is relevant to the subject matter involved in the case. *In Re Surety Ass'n,* 388 F.2d 412, 414 (2d Cir. 1967) ("The only restriction placed upon the matters which may be gone into upon discovery examinations is that they be relevant."). Considering a court's inherent powers to regulate discovery and permit discovery of information relevant to the subject matter, discovery then, in a sense, is more expansive and liberal, guided by the reasonable needs of the case. *Dauphinais v. Cunningham*, 395 F. App'x 745, 746-47 (2d Cir. 2010) (citing *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003) for the proposition that district courts possess "broad discretion in managing the manner in which discovery proceeds"); *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943 (2d Cir. 1992). Generally speaking, the burden of establishing relevancy is on the party seeking the disclosure. *See A.I.A. Holdings S.A. v. Lehman Bros.*, 2000 WL 763848, at *3 (S.D.N.Y. June 12, 2000).

To be relevant, the request for information must be "germane" to the subject matter of the claims, defenses, or counterclaims, though not necessarily limited by such pleadings, and is not controlled by whether it will be admissible at trial. *In re Surety Ass'n*, 388 F.2d at 414 ("[P]arties should not be permitted to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that might conceivably become so."). Relevance to the subject

matter "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case[,]" and yet "like all matter of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978) (citations omitted); *accord Maresco v. Evans Chemetics. Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (citing *Oppenheimer*); *Daval Steel Prods., a Div of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). However, the demarcation between what information is relevant to the claims and defenses and relevant to the subject matter cannot be defined with precision. FED. R. CIV. P. 26 Advisory Comm. Notes 2000 Amend. Thus, the court must weigh a host of factors to determine relevancy and reasonableness, including common sense. *See In re Surety Ass'n*, 388 F.2d at 414 (the trial judge has considerable discretion on the issue of relevancy); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).

Because oral depositions are typically regarded as a preferable means of discovery, the arc of relevancy for a deposition is much more expansive than other discovery devices. "The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long 'accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal

courts [need not] be carried on in the dark.'" *In re Dennis Friedman*, 350 F.3d at 68

(quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964)).

Banner posits that Herbert's deposition is "unquestionably relevant," claiming

that

> [i]t is abundantly clear that Herbert possesses a wealth of relevant
> knowledge that bears directly on several live issues in this case . . . .
> [Because] Herbert was personally and intimately involved in, and was
> Banner's primary contact for, its negotiations with Asahi for the right to
> sell its product line to customers in New York[,] . . . . these lives issues
> . . . include, but are not limited to, whether and to what extent Wicks and
> his hiring by Harrington factored into Asahi's decision not to add Banner
> as an authorized distributor of its products in New York.

Pl.'s Mem. of Law at p. 5; Richard Aff., at ¶¶ 5 & 6.

Further, Banner implores that when employed by Banner, Wicks and Herbert had

interacted on other distribution agreements, and, after Wicks gained employment with

Harrington on August 30, 2011, similar interactions may have continued. Hence,

Banner believes that Wicks assisted Harrington in depriving Banner of the opportunity

to represent Asahi in New York. Richard Aff. at ¶ 7.

Asahi challenges the relevancy of Herbert's testimony as it pertains to the

Banner non-disclosure and non-competitive agreements and/or how Harrington may

have tortiously interfered with the Banner/Wicks Agreements. Asahi belittles

Banner's Motion as mere supposition, conjecture, and devoid of any telling facts

indicating that Herbert has any special knowledge relevant to the claims in this

litigation. Asahi points to the fact that Banner does not allege in either its Complaint or in this Motion that Wicks, prior to his departure, participated, on Banner's behalf, in any negotiation with Asahi on the Malta Project. Rather, for the duration of time that the Malta Project was known to contractors and matters were being discussed between these parties, the key person negotiating with Asahi was Banner's Vice President, Eric Richard. Richard Aff. at ¶ 5. What Asahi fears is that Herbert's deposition will concentrate on the relevancy of the negotiations between Banner and Asahi, "which is not independently relevant to Banner's claims against Harrington for tortious interference." Asahi Mem. of Law at p. 7. Additionally, Asahi argues that because the Subpoena does not indicate the basis of the inquiry and that is not fully revealed in this Motion, Banner has failed to identify what information it believes Herbert may possess about this case: "Herbert has a mere tangential relationship to the matter in dispute." *Id*. at pp. 8-9.

Even accepting as true that Banner's basis for Herbert's deposition is a product of its lawyers' "speculation and opinion," Herbert's extended relationship with Wicks is not merely tangential, and there may have been communications between the two over the relevant period that conceivably could lead to admissible evidence. If indeed Herbert assisted Anderson, Asahi's Senior Vice President for Sales, in obtaining a distributorship for the Malta Project, he would have had a significant role in that

determination, and to the extent that Wicks could have shared vital and confidential information with Herbert, in order to influence that determination to the benefit of Harrington or to the detriment of Banner, establishes his relevancy. What Herbert may know is ostensibly relevant. But the Court's analysis does not conclude here. "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *In re Weatherford Int' Sec. Litig.*, 2013 WL 2355451, at *4 (S.D.N.Y. May 28, 2013) (quoting *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012)). In addition to their objections over relevancy, Asahi and Herbert raise several other reasons as to why this Subpoena should either be denied or modified or that Banner's discovery request should be curtailed.

## B. Undue Burden

In attempting to curtail Herbert's deposition, Asahi delivers a two-pronged attack. First, Asahi exclaims that because Herbert, its Business Development Manager, spends seventy (70) percent of his time traveling on behalf of his employer to promote and expand its business, taking him away from his irreplaceable responsibility would cause "the loss of business [that] cannot be calculated or remedied." Anderson Decl. at ¶ 24.

Second, Asahi argues that, weighing what has already been disclosed, Herbert's

testimony, at best, would be duplicative, cumulative, and redundant, and can be obtained from sources that are less costly, less burdensome, and more readily available. Asahi Mem. of Law at pp. 6 & 11-13. In advancing this argument, Asahi directs the Court's attention to Rule 26(b)(2)(C)(i) and (ii):

> [o]n motion . . . , the court must limit the frequency or extent of discovery . . . that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in this action.

In this respect, Asahi draws upon two sources of previous disclosure that would inexorably make Herbert's "negligible information . . . pointlessly duplicative." Asahi Mem. of Law at pp. 12 & 13.

Though initially and vigorously challenged by Asahi, on about August 24, 2012, it produced - "at its own expense" - approximately 400 pages of documents under the umbrella of the litigation's Protective Order's provision of "Confidential-Attorney's Eyes Only."[7] *Id*. at p. 6; Pl.'s Mem. of Law at p. 9 n.10. But more critical to Asahi is whether the question of Wicks's alleged involvement in the negotiations

---

[7] It remains uncertain whether other responsive documents were withheld or shared under the rubric of "Confidential-Attorney's Eyes Only." The record indicates that Asahi prepared a privilege log that seeks to shield email attachments, dated between April 27, 2011 and March 20, 2012, as "trade secret/business advantage." Dkt. No. 80-6, Ex. F. It is also uncertain as to the nature of these 400 pages of documents, although Asahi claims that they were responsive and Banner does not refute that representation.

or his hiring by Harrington were factors in its decision not to add Banner as an authorized distributor of its products in New York has already been answered *ad nauseam* by other witnesses. In Asahi's view, queries of Wicks's role were thoroughly and exhaustively answered during five previous and independent depositions that collectively indicate that Wicks had nothing to do with Asahi choosing Harrington over Banner.[8]

Taking Asahi's arguments *seriatim*, the Court first finds Asahi's claim that both it and Herbert will be unduly burdened if he has to submit to a deposition to be imperfect and inflated. A one-day deposition, at worst, in Herbert's home state of New Jersey hardly poses a burden upon either him or the company. To suggest that the loss of business would be incalculable and beyond remedy is hyperbolic. Thus,

---

[8] As exemplars of Asahi's perspective that Wicks's involvement has been firmly resolved, Asahi provides specific pages of other depositions. Dkt. No. 80-7, Ex. G (deposition pages). Those testimonies are summarized as follows:

*Kevin Wicks*:
    Does not recall having any communication with any member of Asahi concerning Banner's access to the Asahi and the Globalfoundries project from September 2009 to August 2011.

*James Warren Swanson*:
    Wicks had zero control over any of it, zero, none, not involved.

*Robert Howard Bacon*:
    Wicks had no role nor influence in Harrington's access to Asahi's line for the Globalfoundries project.

*Douglas R. Hodge*:
    Wicks was not involved in Harrington becoming Asahi's distributor at the Globalfoundries project.

the Court is not persuaded by this inchoate argument.

On the other hand, the Court finds quite persuasive, with one exception, that inquiries into Wicks's purported involvement in Asahi's decision-making on the Malta Project is riddled with redundancy and duplication. The Court further concurs with Asahi that there are and have been more convenient, less burdensome, and less expensive discovery exchanges between the parties, with one caveat. It would seem that paper discovery and a handful of depositions would have satiated Banner's appetite on this subject. And yet, in matters of discovery, the adage of "trust but verify" has significant meaning. Setting aside the previous depositions on this very discrete topic, if the Court accepts that Herbert is a vital linchpin to the promotion and expansion of Asahi's business, and that Wicks and Herbert have had business discussions in the past and forged a relationship, it is conceivable that these two businessmen could have shared company confidences that could have influenced a particular business outcome. The Court is not suggesting that is what occurred, but because it is conceivable, it would beckon a relevant inquiry of Herbert as to whether he and Wicks had communications about the Malta Project and the role that either Harrington and/or Banner would play before Asahi made its final decision. Further, Herbert's possible knowledge that Wicks was joining Harrington could be relevant as well. For these and the following reasons, a limited deposition of Herbert would be

warranted.

## C. Trade Secrets and Business Advantage

Because Asahi believes that any knowledge Herbert would have of the Wicks/Banner's non-competitive agreement and/or Wicks's purported role in Asahi's decision to only use Harrington is negligible, if nonexistent, it posits that the principal reason for Banner's insistence of Herbert's deposition is to unveil Asahi's business decision-making process and unearth what factors it relies upon in structuring a deal. Asahi Mem. of Law at p. 10. Although Asahi has divulged, in a limited sense, its manufacture/distributor business scheme, it notes that every project, public or private, is different, and it prides itself on having a technological edge in this arena. Anderson Decl. at ¶ 13. And, as has already been confirmed, Banner and Harrington have been distributors of Asahi, and, in a mighty sense, are competitors for Asahi's attention and business. Asahi exclaims that it has "legitimate privacy and competitive business interests in the specifics of how it chooses its manufacturer's representatives." Asahi Mem. of Law at p. 10. In this respect, there are a myriad of factors that are assessed in the "construction and finalization of a deal," and each deal calls upon specific factors in order to solidify or tailor a particular deal. Anderson Decl. at ¶¶ 17-18. Therefore, Asahi's primary concern is that

> [a] deposition would seek to reveal these confidential and competitive operations and relationships and target information that would

irrevocably destroy business relationships and competitive advantage. These methods and strategic decisions are wholly lawful, legitimate and unrelated to anything in this litigation. Exposing pricing, Distributor capabilities, produce application, confidential agreements, service agreements and technical assistance will do nothing but permanently damage irreparably the work Asahi has done to create its business competitive advantage and run the business relationships [it] has built.

*Id.* at ¶¶ 22-23.

Under the Federal Rules, courts have the authority to quash or modify a subpoena if it requires the answering party to disclose a trade secret. FED. R. CIV. P. 45(3)(B)(i).[9] Courts within this Circuit have been keenly sensitive to the burden imposed upon a non-party witness who may be subject to irreparable harm and prejudice for exposing its proprietary information. *Jack Frost Lab., Inc. v. Physicians & Nurse Mfg. Corp.*, 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994) (citing *Haworth Inc. v. Herman Miller Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993)); *see also Arista Records LLC v. Lime Group LLC*, 2011 WL 781198, at *2 (Mar. 4, 2011) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party.") (alteration in the original, internal quotation marks and citations omitted). And where a subpoena may have little or no relevance to the

---

9  Actually, there may be two Federal Rules applicable to Asahi's request. Federal Rule 45(3)(A)(ii) mandates that the court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waivers applies," and Rule 45(3)(B)(i) permits a court to quash or modify a subpoena "if it requires [] disclosing a trade secret or other confidential research, development, or commercial information."

claims and defenses in a particular action, while having the potential of disclosing

confidential or proprietary information that could create a contemporary and possibly

an uncompromising competitive business edge over others, a court should consider

quashing the subpoena. *Solow v. Conseco, Inc.*, 2008 WL 190340, at \*5 (S.D.N.Y.

Jan. 18, 2008); *Jones v. McMahon*, 2007 WL 2027910, at \*16 (N.D.N.Y. July 11,

2007) (quoting *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (S.D.N.Y. 1983) for

the proposition that "[r]estrictions on discovery may be broader where a non-party is

the target of discovery to protect such third parties from unnecessary harassment,

inconvenience, expense or disclosure of confidential information").

Asahi's trepidation that Banner's inquiry may have less to do with the

Wicks/Banner employment agreements and Wicks's role in the Asahi/Harrington

decision and more to do with exploring the very foundation of Asahi's decisions

regarding the Malta Project are veritable. Banner confirms that

> [it] has demonstrated that Herbert's direct involvement and
> communications with Richard concerning Banner's access to Asahi's
> product line in New York and its right to sell Asahi's product to
> customers there **is relevant**, particularly where, as here, Banner did not
> obtain that product line and maintains that Wicks assisted Harrington in
> depriving Banner of the opportunity to represent Asahi in New York.

Dkt. No. 82, Pl.'s Mem. of Law at p. 3 (emphasis added).

This revelation belies the dual function of Banner's interrogation of Herbert: the

primary inquiry appears to be Asahi's decision-making process while the secondary

aim is whether Wicks assisted Harrington.

The Court is not persuaded by Banner's postulation that Asahi has no competitive business interest or privacy at stake "if a third party (Wicks or Harrington) plays a role in either shaping, influencing or forming Asahi's decision to select one distributor (Harrington) over another (Banner)." *Id*. at p. 4. Not only is this outside the scope of the present litigation but, contrary to Banner's contention, since Banner has not sued Asahi for its decision not to select it as a New York State distributor, Asahi's decision-making process in this realm is not relevant.[10] The basis of Banner's lawsuit is whether Wicks breached his employment contracts and whether Harrington tortiously interfered with said contract, and we will ardently adhere to those parameters of this litigation.

Asahi has legitimate claims of confidentiality and trade secrecy and it has done everything legally permissible to guard against said disclosure. *See* Dkt. No. 80-7,

---

[10] Banner is willing to supplement Eric Richard's Affidavit in order to provide additional substantive details concerning his negotiations and discussions with Herbert. Dkt. No. 82, Pl.'s Reply Mem. of Law at 2. Banner clings to the proposition that these negotiations are paramount and that they must determine the factors and influences that led Asahi to its decision. *Id*. at n.1. This is precisely why Asahi and the Court are concerned about the scope of Herbert's deposition. The matter before this Court deals with the alleged breach of contracts by Wicks and/or Harrington, and not the negotiations between Asahi and Banner. Asahi's decision not to extend a New York distributorship to Banner is a *fait accompli* not subject to any litigation and should not be vicariously incorporated into this litigation. This deposition is not an opportunity to roam around the periphery of the central issues only to corral impertinent information about why Banner was not chosen. Hebert's deposition should be permitted in order to address solely those principle issues at the crux of this case.

*-21-*

Asahi Privilege Log. It is quite understandable that Asahi would want to prevent disclosure of its decision-making process to either litigant or its agents of these two competitors for its business. Under these circumstances, the Court has the vested authority to issue a protective order to secure the sanctity of trade secrets. FED. R. CIV. P. 26(c)(1)(G) & 45(3)(B)(i). While recognizing that the Court has this inherent and statutory authority to issue a protective order to a non-party, Banner contends that it may not be necessary because there already exists a Protective Order with a confidential, attorney's eyes only provision. *See* Dkt. Nos. 33 & 40. Banner even references to the fact that Asahi has already disclosed 400 pages of documents pursuant to this Protective Order. Pl.'s Mem. of Law at p. 9 n.10. And yet absent from the record is whether all documents, including those documents earmarked on Asahi's Privilege Log, were disclosed under the protection of this Order. But, in any event, whether or not they were disclosed, has no bearing on this Court's ruling.

Allowing a client, now turned litigant, to inquire into the ultimate decision that prevented them from being a distributor in New York, even under attorneys' eyes only, is fraught with grave and deleterious peril. Revealing the foundation of a decision that has an integral bearing on two competitors who were vying for the same distributorship, even, and especially, to their respective litigating attorneys, can only be a ruinous course for Asahi who wishes to maintain those business relationships.

Lastly, such an inquiry is not relevant as to Wicks's and Harrington's alleged misconduct.

Although Herbert may possess relevant information as to whether Wicks provided certain information and arguments that could have benefited Harrington in securing the New York distributorship for the Malta Project, it is circumscribed in its scope. Because of the highly sensitive nature of the information being sought, which will have a global impact on future agreements with any distributor and end user, including both Harrington and Banner, the Court agrees with Asahi that the existing Protective Order lends little comfort that the interplay among these parties will not be severely disrupted. The Court shares the view that even the attorney's eyes only provision will not guard against Banner roaming through even Harrington's trade secrets and proprietary information that may have been shared with Asahi in order to secure the Malta Project. Because the current Protective Order is not adequate to protect Asahi's privileges, confidences, proprietary information, and trade secret, the Court grants a further protective order that insulates such inquires and draws a bright line as to what may be the grounds upon which this deposition can occur. Interrogation of Herbert can only pertain as to whether: (1) he had knowledge of the Wicks/Banner employment agreements and whether he was aware that Wicks may have violated those agreements; (2) Wicks shared with Herbert or anyone else at

Asahi any of Banner's confidential trade secrets and proprietary information, and, if so, the nature of that disclosure and its bearing on Asahi's decision making; (3) Wicks advocated for or against either Harrington or Banner being selected as a distributor on the Globalfoundries Project and what bearing that may have on Asahi's decision; (4) Wicks assisted Harrington in any direct or indirect way in depriving Banner of the opportunity to represent Asahi in New York; (5) Harrington provided to Asahi any of Banner's confidential information or trade secrets in order to influence Asahi not to extend a New York distributorship to Banner, and what bearing that may have had on Asahi's decision making; and (6) Herbert knew that Wicks had been hired by Harrington and what bearing that knowledge may have had on Asahi's decision making on the Malta Project.

### D. Contempt and Sanctions

Both Banner and Asahi seek sanctions against one another; in particular, Banner wishes to hold Asahi and Herbert in civil contempt while Asahi seeks attorneys' fees. *See* FED. R. CIV. P. 37(a)(5) (B) & 45(g). Both applications are summarily denied. As indicated above, Asahi has demonstrated a legitimate excuse in not immediately obeying the Subpoena and seeking, instead, court intervention, that is, it unwillingness to produce a witness without a court directing the same. *Rand v. American Ins. Co.*, 2012 WL 628321, at *1 (E.D.N.Y. Feb. 27, 2012) (adequate excuse). Because the

face of the Subpoena does not specify the nature of the inquiry, Asahi and Herbert would have reason to suspect that it would cover matters already withheld under its Privilege Log or to which they have already objected. *See Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990) (noting that the deposition subpoena would be equally objectionable for the reasons previously given to a subpoena for records). Moreover, while non-compliance of a valid subpoena may constitute contempt, a question remains whether this Subpoena would be considered the same as one issued by a judicial officer, and whether Asahi refused to comply with a court order. *See Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991) (quoting *Waste Conversion, Inc. v. Rollins Envtl. Servs. (NJ), Inc.*, 893 F2d 605, 608 (3d Cir. 1990)). Likewise, Banner has established substantial justification for bringing a motion to compel because there is a genuine dispute as to what Herbert may know regarding the underlying facts of the non-competitive agreements or what influence Wicks may have wielded in Asahi's decision-making process on the Malta Project, and that reasonable parties may differ as to the appropriateness of the contested subpoena. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Actually this reasoning is applicable to both parties. There is a genuine dispute as to the relevancy and scope of the Herbert Subpoena and its potential intrusion upon trade secrets, and these parties, both deemed reasonable,

differ substantially as to the appropriateness of the Subpoena. Therefore, the Court does not hold Asahi in civil contempt nor will it impose sanctions against Banner.

## III. CONCLUSION

Based upon all of the foregoing, Adam Herbert shall submit to a deposition in New Jersey near his home within twenty (20) days of the filing date of this Order, subject to the conditions outlined above. Neither contempt nor sanctions will be imposed on any party. Accordingly, it is hereby

**ORDERED** that Banner's Motion to Compel, Dkt. No. 78, is **granted in part and denied in part**, consistent with the instructions stated above; and it is further

**ORDERED** that Asahi's Cross-Motion for Sanctions, Dkt. No. 80, is **denied**; and it is further

**ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum-Decision and Order to Asahi's Counsel, McCarter & English, LLP, 265 Franklin Street, Boston, Massachusetts 02110.

**IT IS SO ORDERED**.

October 21, 2013
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge